IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAMELA JEAN HOKAMP,

                Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　OPINION and ORDER

JOEL FLEWELLEN, GERMAN OLIVARES,　　　　　　　23-cv-181-jdp
and MIKE BURGER,

                Defendants.

---

Plaintiff Pamela Jean Hokamp, proceeding without counsel, alleges that defendants, law enforcement officers for the Wisconsin Rapids Police Department, used excessive force and illegally seized her and searched her residence while responding to a 911 call about unresponsive guest W.T.[1] Hokamp brings Fourth Amendment excessive force and illegal seizure claims against defendants Joel Flewellen and German Olivares, and a Fourth Amendment illegal search claim against defendant Mike Burger.

Defendants filed a motion for summary judgment, which they corrected. Dkt. 48 and Dkt. 54. Hokamp didn't respond to their motion, but moved for summary judgment herself. Dkt. 56. Because Hokamp failed to support her motion with individual proposed facts supported by admissible evidence, I will deny it. But I will treat Hokamp's motion as a brief in opposition to defendants' motion.

The undisputed facts show that Flewellen and Olivares had a basis to believe that Hokamp was maintaining a public nuisance, and that they used minimal force while briefly

---

[1] Because it's unclear whether W.T. was a minor when the events at issue occurred, I will refer to him by his initials.

detaining her to issue the citation. Thus, I will grant summary judgment to Flewellen and Olivares on the illegal seizure and excessive force claims. The undisputed facts also show that Burger conducted a limited search of the bedroom in which W.T. overdosed to determine what drug he had taken, not to look for evidence of a crime. Hokamp hasn't shown that, when the events at issue occurred in June 2017, it was clearly established that this conduct violated the Fourth Amendment. Therefore, I will grant summary judgment to Burger on the illegal search claim on qualified immunity grounds.

UNDISPUTED FACTS

Because Hokamp didn't respond to defendants' proposed findings of fact, I will accept them as true. *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 348–49 (7th Cir. 2020) (district court may accept a party's proposed findings of fact as undisputed if the opposing party doesn't dispute them).

On June 11, 2017, defendants Flewellen, Olivares, and Burger were dispatched to a residence based on a report that a man was acting strangely. Hokamp, who owned the residence, was there along with visitors W.T. and Tina Fischer. Upon arrival, defendants received consent to enter the residence. Fischer was in one bedroom trying to wake W.T. up, and Hokamp was in another bedroom. W.T. wasn't responsive and had agonal breathing and a rapid pulse. After contacting EMS, Olivares and Burger moved W.T. to the floor and put him in the recovery position.

EMS arrived and eventually revived W.T. after administering Narcan, "a medication that works as an opioid antagonist to reverse the effects of an opioid overdose." *Anderson v. United States*, 94 F.4th 564, 569 n.3 (7th Cir. 2024). Meanwhile, Fischer told Burger that she

suspected that W.T. took heroin. Burger asked Fischer if the officers could search the bedroom that W.T. was in and she consented. Burger found a syringe with blood on the needle tip inside a desk drawer. The bedroom that Hokamp was in wasn't searched.

In the preceding five months, the police had been dispatched to Hokamp's residence 23 times for various disturbances including drug overdoses and welfare calls arising from criminal activity. Based on a prior overdose at the residence, Hokamp had received a citation for violating Wisconsin Rapids Ordinance 25.29, which prohibits maintaining a public nuisance. Olivares lived across the street from Hokamp and was aware of the repeated disturbances and police calls to her residence, and Hokamp had been warned that this activity was a nuisance under municipal law. Flewellen and Burger knew about the previous disturbances and concluded that the incident with W.T. caused a similar disturbance.

As EMS continued to work on W.T., the officers asked Hokamp to speak with them in the living room because they had determined that there was probable cause to cite her for maintaining a public nuisance. Hokamp grew upset when Burger told her that she would be receiving a citation, and she disregarded the officers' orders to stay in the living room so they could finish talking to her. In response, Olivares and Flewellen each held one of Hokamp's wrists and elbows to stop her from walking away. Olivares and Flewellen held Hokamp in this manner for about ten seconds, after which she stopped trying to walk away and sat down. Olivares and Flewellen didn't drag Hokamp across the room or otherwise use enough force to injure her ankle or arms, and Hokamp didn't mention a preexisting injury.

After Hokamp received the citation and EMS transported W.T. to the hospital, defendants left her residence. The entire incident lasted for about 30 minutes. Hokamp didn't

take any steps to dispute the citation, and the Wisconsin Rapids Municipal Court entered a finding of guilt by default. Hokamp was assessed a fine and she ultimately paid it.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

I will discuss the illegal seizure and excessive force claims first because they turn on related facts. I will then turn to the illegal search claim.

**A. Illegal seizure**

Hokamp is proceeding on the allegation that Flewellen and Olivares illegally seized her by dragging her to the door and "starting" to arrest her even though they had no basis to suspect that she was involved in illegal activity. The Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[P]robable cause is an absolute defense to claims under [42 U.S.C. §] 1983 against police officers for an allegedly unreasonable seizure." *Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir. 2019). Probable cause means that the circumstances that an officer is aware of are enough for a prudent person to believe that the suspect has committed an offense. *See United States v. Hill*, 818 F.3d 289, 294 (7th Cir. 2016).

The undisputed facts show that probable cause supported Hokamp's seizure. The police and EMS were called to Hokamp's residence because W.T. was unresponsive, and defendants had reason to believe that he overdosed on heroin. In the preceding five months, the police had been dispatched to Hokamp's residence 23 times for various disturbances, including drug overdoses, and she had previously been cited for maintaining a public nuisance based on a drug overdose. Defendants knew about the repeated disturbances at Hokamp's residence, and the

incident with W.T. involved similar activity. The evidence shows that, when Flewellen and Olivares seized Hokamp, the circumstances were enough for a prudent person to reasonably believe that Hokamp had violated Ordinance 25.29.

Hokamp states in her brief in opposition that she wasn't involved in illegal activity when Flewellen and Olivares seized her and, for that matter, had never committed a crime. Dkt. 56 at 2–3. To But Hokamp doesn't dispute that W.T. overdosed in her residence. Nor does Hokamp directly dispute that she had previously been cited for maintaining a public nuisance, or that there had been other disturbances at her residence; her unsupported statement that she never committed a crime isn't enough to establish that fact. Furthermore, Hokamp states that she had "placed calls to the police due to her personal property being stolen," which is consistent with defendants' contention that they had received multiple calls about criminal activity in her residence. *See* Dkt. 56-1 at 2. Because no reasonable jury could find that Flewellen and Olivares lacked probable cause to seize Hokamp, I will grant summary judgment to them on her illegal seizure claim.

**B. Excessive force**

Hokamp alleges that Flewellen and Olivares dragged her to the door even though they lacked a basis to suspect her of a crime and could see that she was wearing a cast, and that this force sprained her ankle. Courts analyze claims that police officers have used excessive force during arrests of free citizens under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether an officer's use of force is reasonable depends on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

A reasonable juror could conclude only that Flewellen and Olivares used objectively reasonable force to detain Hokamp. The undisputed facts are that Hokamp grew upset when Burger told her that she would be receiving a citation, and she disregarded the officers' orders to stay in the living room so they could finish talking to her. In response, Olivares and Flewellen each held one of Hokamp's wrists and elbows to stop her from walking away for about ten seconds, releasing her when she sat down. Using minimal force to momentarily detain a suspect whom officers have probable cause to detain and who is attempting to avoid detention is reasonable.

In her brief in opposition, as in her amended complaint, Hokamp says that Flewellen and Olivares "grabbed" her by her wrists and elbows and dragged her to the front door with enough force to sprain her ankle even though she was wearing a leg cast. Dkt. 56 at 1–2. But Hokamp didn't support this statement with admissible evidence, thus failing to "come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). I will grant summary judgment to Flewellen and Olivares on the excessive force claim.

**C.  Illegal search**

I allowed Hokamp to proceed on the allegation that Burger searched a room in her residence, which suggested that he was looking for evidence of a crime. But defendants contend, and Hokamp hasn't disputed, that Burger was trying to determine what drug W.T. took to assist EMS in ensuring his survival. Dkt. 55 at 17–18; *see* Dkt. 53 ¶ 12. And defendants contend that it wasn't clearly established when Burger conducted the search that the Fourth Amendment prohibited it. *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620 (7th

Cir. 2022) ("Qualified immunity shields state actors from liability where their conduct does not violate clearly established . . . constitutional rights . . . .").

In resolving questions of qualified immunity at summary judgment, courts ask: (1) whether the facts, when taken in the light most favorable to the plaintiff, show that the defendant violated a federal right; and (2) whether the right was clearly established at the time of the violation. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam). District courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). I will consider the second prong because it's dispositive here.

"A right is clearly established where it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Stockton*, 44 F.4th at 620. In most cases, the plaintiff must identify a "closely analogous case finding the alleged violation unlawful," or at least a "clear trend" in persuasive authority showing that "recognition of the right by a controlling precedent was merely a question of time." *Id.*; *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). If there is no controlling decision by the U.S. Supreme Court, Wisconsin cases are relevant to determine what the defendants "might have thought the law, including the federal constitution, permitted them to do." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 573 (7th Cir. 2014). The plaintiff bears the burden of defeating the defendant's claim to qualified immunity. *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021).

The issue is whether it was clearly established in June 2017 that Burger's search violated the Fourth Amendment. It's undisputed that Burger searched the bedroom to determine what drug W.T. took to help EMS ensure his survival, not to look for evidence of a crime. Hokamp

7

has made no effort to identify authority holding, or even suggesting, that the Fourth Amendment prohibited that conduct, and I found none clearly establishing that rule as of June 2017. In fact, the state supreme court had held that police officers serving as "community caretakers" may be constitutionally permitted to perform warrantless searches and seizures for the purpose of ensuring the welfare of community members. *See State v. Matalonis*, 2016 WI 7, ¶ 30. Similar to this case, when Burger conducted the search, the state supreme court hadn't excluded the possibility of "sustain[ing] the search of someone's medicine cabinet, nightstand, or pursue in an effort to locate drugs" "in the case of a reported suicide attempt by drug overdose." *See Sutterfield*, 751 F.3d at 577. The U.S. Supreme Court has clarified that law enforcement's community caretaking functions alone wouldn't justify "warrantless searches and seizures in the home." *Caniglia v. Strom*, 593 U.S. 194, 196 (2021). But *Caniglia* was decided four years after the events at issue, so it could not have clearly established that Burger's search violated the Fourth Amendment. Because Hokamp hasn't met her burden to show that it was clearly established that Burger's conduct violated the Fourth Amendment, I will grant summary judgment to Burger on the illegal search claim.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 48 and Dkt. 54, is GRANTED, with the result that plaintiff Pamela Jean Hokamp's claims are DISMISSED with prejudice.

2. Plaintiff's motion for summary judgment, Dkt. 56, is DENIED.

3. Defendant Flewellen is to be recaptioned as "Joel Flewellen," and defendant Burger is to be recaptioned as "Mike Burger."

4. The clerk of court is directed to enter judgment and send plaintiff copies of this order and the judgment.

Entered June 6, 2024.

                                              BY THE COURT:

                                              /s/

                                              _____
                                              JAMES D. PETERSON
                                              District Judge